[Docket Nos. 23 and 30]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

ALLOWAY TOWNSHIP BOARD OF
EDUCATION,

     Plaintiff,

          v.

C.Q. AND R.Q. o/b/o C.Q.,

     Defendants.

Civil No. 12-6812 (RMB/AMD)

**OPINION**

Appearances:

Brett E.J. Gorman, Esquire
Parker McCay PA
9000 Midlantic Drive, Suite 300
Mt. Laurel, New Jersey 08054
     Attorney for Plaintiff

Ira M. Fingles, Esquire
Hinkle & Fingles, Esqs.
2651 Main Street, Suite A
Lawrenceville, New Jersey 08648-1012
     Attorney for Defendants

**BUMB,** United States District Judge:

     This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(a). [Docket Nos. 23 and 30].  The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2).  For the reasons set forth below, the Court grants Plaintiff Alloway Township Board of Education's motion in part and denies the motion of Defendants

C.Q. and R.Q., and remands for reconsideration consistent with the reasoning set forth below.

I.   <u>BACKGROUND</u>

C.Q. is a student in the Alloway Township School District ("Alloway" or "District").  During the 2011-12 school year, C.Q. was in fourth grade and placed in an in-district educational program.  Plaintiff's Statement of Material Facts Pursuant to L.Civ.R. 56.1 ("PSMF"), Docket No. 23-2, at ¶ 4.  C.Q. had three special education teachers throughout the school day, an instructional aide, and was educated with only one other student.  <u>Id.</u> at ¶ 5.  He was with non-disabled and lesser disabled peers during lunch and in the resource center.  Defendants' Response to PSMF ("Def. Resp."), at ¶ 5.  According to Alloway, C.Q.'s behavior, such as spitting, hitting, hair pulling, and toileting problems, increased to the point where it became very difficult to control C.Q. in the school environment.  <u>Id.</u> at ¶ 6.  After trying different measures, such as a resource center, behavioral consultant, a one-on-one teacher, which did not address C.Q.'s educational and behavioral needs, Alloway concluded that it could no longer offer C.Q. an appropriate education and therefore recommended that C.Q. attend an out-of-district placement for the 2012-13 year.  <u>Id.</u> at ¶¶s 7-18.

Defendants dispute that C.Q. was not making significant and meaningful academic progress. Def. Resp. ¶ 9.  Although they are

2

upset with the District's portrayal of C.Q., they do not dispute
that it was "difficult [for Alloway] to provide academic
instructions because of C.Q.'s frequent behavior problems."
Def. Resp. ¶ 11.

Sometime in February 2012, Alloway advised C.Q.'s parents
that it was considering an out-of-district placement.  Alloway
invited the parents of C.Q. to look at various out-of-district
programs.  Docket No. 23, Ex. D, page 83.  The parents, however,
refused to look at any other programs:  "[we] are not interested
in looking at any other programs and we wouldn't want to
misrepresent ourselves by going to see any other
programs/schools.  But, you may forward us the names of
placements that you are considering.  The purpose of our letter
was to reiterate our disagreement with a change of placement.  I
hope that was clear and we remain steadfast in that belief."
Id.

On March 6, 2012, the District convened a meeting of the
Individualized Education Plan ("IEP") team, which only C.Q.'s
father attended.  Defendants Statement of Material Facts
Pursuant to L.Civ.R. 56.1 ("DSMF"), Docket No. 30-2, at ¶ 8.  At
the meeting, the District informed C.Q.'s father of the decision

to place C.Q. at Salem County Special Services.[1]  DSMF ¶ 8.  The
March 2012 IEP recommended a self-contained out-of-district
program, with a hand-written notation, "Salem County Special
Services - - Pittsgrove Middle School Program."  Ex. C-2[2]
Defendants claim that they were given no information as to why
SCSS was preferable over C.Q.'s continued placement at Alloway
or any specifics regarding C.Q.'s education at SCSS.  Alloway
denies this claim, and contends that the parents refused: to
consider any program other than an in-district placement, to
visit SCSS, or to engage in any meaningful discussion relating
to the SCSS placement.  Plaintiff's Response to DSMF, ¶¶s 9-10,
Docket No. 34-1.

Eight days after the IEP meeting, Defendants C.Q. and R.Q.,
on behalf of C.Q., requested mediation and a due process
hearing.  The parties participated in mediation but were unable
to reach a settlement.[3]  The parties then appeared before
Administrative Law Judge ("ALJ") Lisa James-Beavers.  Defendants
argued before the ALJ that Alloway had not proven that it
offered C.Q. a "free, appropriate public education" ("FAPE")

---

[1]  Alloway identified several potential placements for C.Q.,
but ultimately selected Salem County Special Services ("SCSS")
as the out-of-district placement.  Id. ¶¶ 22-23.

[2]  Exhibit C-2, the March 2012 IEP, was admitted as an
exhibit by consent of the parties at oral argument.

[3]   In New Jersey the parties are required to engage in
mediation prior to a due process hearing.

"because it failed to develop an IEP that set forth the educational program it intend[ed] to provide for him [at SCSS]." Opinion ("Op."), at 18, Docket No. 23-3.  Defendants alleged that the District committed both procedural and substantive violations of IDEA.  Op., at 18.  After three days of testimony and one day of oral argument, on October 3, 2012, Judge James-Beavers issued her decision, finding that the District had denied C.Q. a FAPE "for making a predetermined placement and failing to develop an IEP to justify the out-of-district placement at Salem County and the services that C.Q. will be provided."  Op. at 21.  The ALJ's conclusion rested solely on procedural grounds.  The ALJ held: "[o]n its face, the March 2012 IEP denies C.Q. FAPE." Id.  The ALJ noted that her "decision may be postponing the inevitable in light of the testimony of the District's witnesses, [but] the District must employ the proper procedure to remove a student from his regular education program and place him out-of-district."  Op. at 21.

As for the ALJ's findings of fact, Judge James-Beavers found the following:

> The Alloway School District (District) consists of 438 students in grades kindergarten to eighth grade, approximately forty of whom are classified.  Janis Gansert is the Principal and Child Study Team (CST) Supervisor.  Ms. Gansert has twenty-eight years in the field of education, but is not certified in the field of special education.  She supervises the special education teachers and attends IEP meetings.  In her prior positions, she taught French and Spanish.

C.Q. has attended school in the District since he was
in pre-kindergarten.  However, he was briefly educated
at St. John of God when the District was not able to
handle his needs.  He was first classified as
communication impaired, but is now classified as
multiply disabled due to dyspraxia, motor issues and
communication impairments.  C.Q. has been observed
spitting, hitting and making noises, including
screaming sometimes up to five minutes.  His ability
to communicate orally is very limited.

According to Janis Gansert, in first grade, the
District's attempts at academic inclusion of C.Q. did
not work, but he was with non-disabled peers for
recess, lunch and other non-academic activities.  In
second grade, the differences between him and the non-
disabled students began widening and he was limited to
being with only his special education teacher.  In
third grade, he had two teachers for academic
subjects, one in the morning and one in the afternoon.
C.Q. was included in specials for short periods of
time.  Ms. Gansert testified that the noises and
problem behavior made his inclusion difficult.  The
District added an instructional aide to help him, but
the behavior became even harder to control.  C.Q. had
additional problems with toileting, pulling his pants
down, and pulling up teachers' shirts.  There were 113
incidents written up in the fourth grade alone. . . .
The incidents were all related to his disability, so
he was not disciplined.  In addition, the gap between
his abilities and those of his peers grew wider.  At
the end of the 2011-2012 year, C.Q. spent most of his
instructional time with his two teachers.  It is very
difficult for them to provide C.Q. with academic
instruction because of the frequent behaviors
previously mentioned.  The District has employed
behavioral consultants, contracted for teacher
training by the behavioral consultants, hired an
instructional aide and hired a special education
teacher with C.Q. in mind.  It sought parental input
at all times and welcomed the reports from the
parents' private providers.  His behavior had an
impact on other students in that his conduct disrupts
the classroom.  The foregoing was undisputed and
therefore **FOUND** as **FACT**.

Op. at 2-3.  The ALJ made no other findings of fact or any credibility determinations.

On November 2, 2012, Alloway filed the instant Complaint. The District alleges that the ALJ erred (1) by placing C.Q. in an in-district program and not SCSS; and (2) by failing to apply the proper standard in determining whether the District provided a FAPE, discussed <u>infra</u>.  <u>See</u> Complaint, Docket No. 1.

On October 15, 2013, Alloway filed a motion for summary judgment, and on January 8, 2014, C.Q. and R.Q. filed a cross-motion for summary judgment.  On February 20, 2014, this Court heard oral argument.  For the reasons that follow, this Court finds that the ALJ erred when she held that the District's procedural violations constituted a denial of FAPE.  First, the record does not support the ALJ's factual finding that Alloway committed procedural violations under IDEA.  Second, even assuming the existence of such procedural violation resulting from the inadequacy of the IEP, there was no evidence that such violation resulted in substantive harm, <u>i.e.</u>, the loss of educational benefits to C.Q. or the inability of C.Q.'s parents to participate in the IEP process.  As such, Alloway did not deny C.Q. a FAPE in violation of IDEA.

II.  DISCUSSION

A.  Standard of Review

The standard of review under which this Court considers an appeal of a state administrative decision under the IDEA "differs from that governing the typical review of summary judgment."  Heather S. by Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).  Section 1415(i)(2)(B) of the IDEA provides that district courts "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(B).[4] When there is no new evidence presented to the district court, as in this case, the motion for summary judgment is the procedural vehicle for deciding the case on the basis of the administrative record.  Heather S. by Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1052.

IDEA directs the district court to "conduct a modified de novo review, giving 'due weight' to the underlying administrative proceedings." C.H. v. Cape Henlopen School District, 606 F.3d 59, 65 (3d Cir. 2010)(citing S.H. v. State Operated Sch. Dist. Of City of Newark, 336 F.3d 260, 270 (3d

---

[4]  Neither party has asked this Court to hear additional evidence.

Cir. 2003)).  Factual findings from the administrative
proceedings are to be considered prima facie correct.  Id.   See
also Ridley School District v. M.R., 680 F.3d 260, 268 (3d Cir.
2012)(stating that if a renewing court fails to adhere to the
factual findings, it must explain why).  "[P]recedent makes it
clear that '[t]he issue of whether an IEP is appropriate is a
question of fact.'" P.P. v. West Chester Area Sch. Dist., 585
F.3d 727, 735 (3d Cir. 2009) (quoting Carlisle Area School v.
Scott P., 62 F.3d 520, 526 (3d Cir. 1995)).  Findings of fact
with respect to the appropriateness of the IEP are, therefore,
reviewed for clear error.  Carlisle, 62 F.3d at 526.  Unlike the
administrative law judge's factual findings, her determinations
of law are not entitled to special deference.  Id. at 528, n.3.

   B. Analysis

   The purpose of IDEA is "to ensure that all children with
disabilities have available to them a free appropriate public
education ('FAPE') that emphasizes special education and related
services designed to meet their unique needs and prepare them
for further education, employment and independent living." 20
U.S.C. § 1400(d)(1)(A).  IDEA requires that states receiving
federal funds for education must provide a FAPE to every
disabled child.  See generally 20 U.S.C. § 1412.

   IDEA imposes certain requirements on a school district.
First, the school must provide an "appropriate" education, that

is, confer a meaningful education to a child with special needs.
The core of that education is embodied in an Individualized
Education Plan, commonly referred to as an IEP.[5]  Second, the
school must, to the maximum extent appropriate, educate the
child in the least restrictive environment, commonly referred to
as LRE.[6]  See generally Carlisle Area, 62 F.3d at 533-34(citing
Rowley, 458 U.S. at 200).  The LRE ideally would be the same
school the child would have attended if he were not disabled.
Carlisle, 62 F.3d at 535.  But such LRE placement is only
appropriate to the extent the educational environment is
"appropriate" – i.e., satisfactorily educates the child.  Id.
In other words, if "the educational environment is not
appropriate, then there is no need to consider whether it is the

---

   [5]  An IEP must include, inter alia, (1) a statement of the
child's present levels of academic achievement and functional
performance, (2) a statement of measurable annual goals,
including academic and functional goals, (3) a statement of the
special education and related services and supplementary aids
and services to be provided to the child, (4) an explanation of
the extent, if any, to which the child will not participate with
nondisabled children in the regular class and activities, and
(5) the frequency, location and duration of the services.  20
U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320(a)(1); N.J.A.C. §
6A:14-3.7.
   [6] 20 U.S.C. § 1412(a)(5) provides as follows: "To the
maximum extent appropriate, children with disabilities,
including children in public or private institutions or other
care facilities, are educated with children who are not
disabled, and special classes, separate schooling, or other
removal of children with disabilities from the regular
educational environment occurs only when the nature or severity
of the disability of a child is such that education in regular
classes with the use of supplementary aids and services cannot
be achieved satisfactorily."

least restrictive." S.H. v. State-Operated School District of the City of Newark, 336 F.3d 260, 272 (3d Cir. 2003).

In determining whether the District has provided a FAPE, there is a two-pronged inquiry. First, have the procedural requirements under IDEA been met? Second, does the IEP confer a meaningful educational benefit? Rowley, 458 U.S. at 200-01; Carlisle, 62 F.3d at 533-34. See also Oberti v. Bd. Of Educ. Of Borough of Clementon Sch. Dist., 995 F.2d 1213 (3d Cir. 1993). A school district need not provide the "optimal level of services, or even a level that would confer additional benefits, since the IEP required by IDEA represents only a basic floor of opportunity." Carlisle, 62 F.3d at 533-34 (citing Rowley).

Judge James-Beavers found that Alloway had denied C.Q. a FAPE based on the first prong, finding that the contents of the March IEP denied C.Q. a FAPE. Although the ALJ correctly stated the law, i.e., that a procedural violation under IDEA may rise to the level of a denial of a FAPE, see infra, she misapplied it to the facts here. As discussed further below, the ALJ's finding that the March 2012 IEP "on its face" denied C.Q. a FAPE was clearly erroneous. Moreover, to the extent the ALJ found that Alloway had "predetermined" SCSS, meaning without parental participation, such finding was clearly erroneous, and not supported by the record.

11

To be sure, the procedural safeguards under IDEA are significant to the development of an IEP.  As the Supreme Court held:

> [w]hen the elaborate and highly specific procedural safeguards [in IDEA] are contrasted with the general and somewhat imprecise substantive admonitions in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid.  It seems to us no exaggeration to say that Congress placed every bit of emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process . . . as it did upon the measurement of the resulting IEP against a substantive standard.

Rowley, 458 U.S. 205-06.

A procedural violation of IDEA, however, is not a per se denial of a FAPE.[7]  Rather, a school district's failure to comply with the procedural requirements of IDEA will constitute a denial of a FAPE only if such violation caused substantive harm to the child or his parents.  C.H. v. Cape Henlopen School District, 606 F.3d 59, 66 (3d Cir. 2010).  Substantive harm occurs only if the preponderance of the evidence indicates that:

> The procedural inadequacies (i) [i]mpeded the child's right to a FAPE; (ii) significantly impeded the

---

[7]   IDEA sets forth the requirements that a school district must follow when it proposes to change the educational placement of the child.  See 20 U.S.C. § 1415(c); 34 C.F.R. 300.503(a). The notice must include, inter alia, (1) a description of the action proposed by the agency, (2) an explanation of why the school proposed to take the action; (3) a description of each evaluation procedure, assessment, record, a report the school used as a basis for the proposed action, and (4) a statement that the child's parent(s) have procedural safeguards available to them. Id.

> parent's decision-making process regarding the
> provision of a FAPE to the parent's child; or (iii)
> caused a deprivation of the educational benefit.

34 C.F.R. § 300.513(a)(2); C.H., 606 F.3d at 59 & 67 (finding

that the procedural violation "significantly impede[d] the

parents' opportunity to participate in the decision-making

process regarding a provision of a FAPE to the parent's

child.")(quoting 34 C.F.R. § 300.513(a)(2)).  See also D.S. v.

Bayonne Bd. Of Education, 602 F.3d 553 (3d Cir. 2010) ("A

procedural violation is actionable under the IDEA only if it

results in a loss of educational opportunity for the student,

seriously deprives parents of their participation rights, or

causes a deprivation of educational benefits."); Adam J. v.

Keller Indep. Sch. Dist., 328 F.3d 804, 811-12 (5th Cir. 2003)

("[P]rocedural defects alone do not constitute a violation of

the right to a FAPE unless they result in the loss of an

educational opportunity."); DiBuo v. Bd. of Educ., 309 F.3d Cir.

184, 190 (4th Cir. 2002) ("[A] violation of a procedural

requirement of the IDEA (or one of its implementing regulations)

must actually interfere with the provision of a FAPE.")

First, as an initial matter, it bears noting that there

appears to have been unanimous confusion as to whether an IEP

was even in existence.  The ALJ seemed to hold, initially at

least, that there was no IEP in place.  See Op. at 18-19 ("the

District is abdicating its responsibility to provide an IEP and

leaving the formulation of the IEP to the out-of-district placement [and] any attempt to have C.Q. placed out-of-district and then develop the IEP is entirely inappropriate.")  Even both parties appeared to have argued before Judge James-Beavers that there was no IEP in place, but at some point in the proceeding Alloway reversed course.  Indeed, Defendants appeared to have adopted the same erroneous conclusion before this Court, at least initially, because they argued throughout their initial briefing that no IEP existed.  See Def.'s Br. at 11.  Only in their reply brief, and at oral argument, did Defendants concede that an IEP was in fact, in place.[8]  They contend, however, that it was not an appropriate one for the reasons articulated by Judge James-Beavers.[9]  To the extent the ALJ's decision can be read to mean that no IEP was in place, this finding is not supported by the record.  In fact, this finding directly

---

[8]    Defendants misconstrue Jennifer Morales' testimony, C.Q.'s case manager and a school social worker, that an IEP would be drafted 30 days later.  When read in context, Morales' testimony can only be understood to mean that an IEP was in place but 30 days after C.Q. was at SCSS, an improved IEP would implemented, based upon a collaboration between SCSS and the parents. See Compl. Ex. C at 95-99 ("Well, initially he would get whatever was placed in his IEP, and then if they felt he needed more once he was there, then we would have[] a 30 day meeting and make[] the changes.")

[9]    Clearly, the absence of an IEP that substantively affected the educational opportunities of a child would constitute a procedural violation of IDEA.  Cf. C.H., 606 F.3d at 59 (finding school district's failure to have an IEP in place for a short period of time was a procedural error that did not result by a denial of a FAPE).

contradicts the ALJ's subsequent finding (and holding) that the March 2012 IEP, "on its face," denied C.Q. a FAPE.

Turning to the crux of the ALJ's decision, the ALJ found that the District denied C.Q. a FAPE because the March 2012 IEP:

> denies C.Q. FAPE because it does not explain why he cannot be educated in the least restrictive environment of his school district and does not detail those special education services and supplementary aids that the out-of-district will provide.  The District has simply decided to place C.Q. in Salem County and let that placement develop the IEP. Therefore I conclude that [Alloway] is in violation of the IDEA and denied FAPE for making a predetermined placement and failing to develop an IEP to justify the out-of-district placement at Salem County and the services that C.Q. will be provided.  Although this decision may be postponing the inevitable in light of the testimony of the District's witnesses, the District must employ the proper procedures to remove a student from his regular education program and place him out-of-district.

Op. at 21.

The Court finds that the ALJ's findings were not supported by the record.  Contrary to her finding, the March 2012 IEP does, in fact, explain why C.Q. cannot be appropriately educated at Alloway, even in the least restrictive environment.  The IEP explicitly states:

> [C.Q.'s] program with a special education teacher and an all day aide is also not able to meet the youth's needs in the resource setting or other inclusive settings because [C.Q.] will only tolerate these settings for a short period of time before disruptive behaviors result which interfere with both his learning as well as the learning of his peers.

15

> The school district members of the IEP team feel that
> a self contained classroom where [C.Q.] is the only
> student is not the most appropriate placement.  His
> academic social and behavioral needs require increased
> support from a placement where a school wide
> behavioral plan can be implemented.  A placement where
> children with similar language and learning needs
> would also provide [C.Q.] access to peers with whom he
> can develop positive relationships while also
> addressing his academic goals.

Ex. C-2, pg. 4.

Moreover, contrary to the ALJ's findings, the March 2012

IEP details the special education services and supplementary

aids that SCSS would provide.  See id. at 6-7 (providing for

speech/language therapy, occupational therapy, physical therapy,

special transportation, and assistive technology and stating

that "Spanish will be replaced by another special.  [C.Q.] will

continue with jobs' throughout the school week such as the Pre-K

milk delivery but not limited to this.  A FBA will be completed

on spitting behavior.   . . . A second adult will attend

specials with [C.Q.] and his aide.")

The testimony adduced at the hearing established,

without dispute, that SCSS had reviewed the IEP and was

able to provide the services set forth therein.  See, e.g.,

Ex. Morales Testimony, Docket No. 1, Ex. C at 267-68.

> Q: "[A]fter the IEP in March when the recommendation
> was made for a change of placement . . .  what [was]
> the next step."
>
> A: "We requested consent to send the records to Salem
> County Special Services and then they review the IEP

> to determine if they can meet the student's needs . . . ."
>
> Q: "Okay.  And was there an indication from Salem County Special Services School District that they could meet his IEP?"
>
> A:  "Yes."

See also Docket No. 1, Ex. C. at 97 (stating that child would receive the same intensity of related services when he started in the special services program).  Confusingly, the ALJ stated: "Procedurally, the placement should simply implement the IEP that was developed and provided the rationale for the out-of-district placement."  Op. at 19.  Yet, this is exactly the procedure the District followed.

Finally, even assuming the IEP was facially deficient, the contents of the IEP did not implicate the IDEA's procedural requirement.  Cf. Ridley School District v. M.R., 680 F.3d 260, 274 (3d Cir. 2012)("to the extent that the absence of specially designed instruction in the IEP constituted a procedural violation, it did not affect the substantive rights of E.R. or Parents"); D.S. v. Dayone,602 F.3d 553, 565 (3d Cir. 2010)(quote).

The ALJ also erroneously concluded that Alloway denied C.Q. a FAPE in violation of IDEA based on a procedural violation - - that it had made a "predetermined placement" and "fail[ed] to develop an IEP to justify the out-of-district placement."  Op.

at 21.  To the extent this constituted a second basis for finding a procedural violation,[10] there was simply no evidence before the ALJ that Alloway had significantly impeded the parents' opportunity to participate in the decision-making process or discuss with the parents C.Q.'s prospective placements.  See, e.g., D.B. v. Gloucester Twp. School District, 489 Fed. Appx. 564, 566 (3d Cir. 2012).  Initially, the Court notes that the ALJ made no findings, of credibility or otherwise, relating to procedural violations other than the substance of the IEP.  As such, there are no findings of fact to which this Court need defer.  See id. ("The only reason the court did not defer to the ALJ was because the ALJ did not make any factual findings as to whether [the school] had complied with IDEA's procedural requirements.")

Even putting the issue of credibility aside, the uncontradicted record is that the parents declined to actively participate in the IEP process.  Although C.Q.'s father attended the IEP hearing, many of the questions Defendants had at the due process hearing were never asked at the IEP meeting.  See infra.

---

[10]   Predetermination of an IEP can be grounds for finding a violation of the IDEA because it serves to exclude parents from meaningfully participating in the decision-making process. Furhmann v. East Hanover Bd. Of Educ., 993 F.2d 1031, 1036-37 (3d Cir. 1993) (no predetermination whether the parents were involved); D.B. v. Gloucester Twp., 751 F. Supp. 2d 764, 771 (D.N.J. 2010).

It was only during the due process hearing that many questions were posed to Alloway's witnesses, whom the ALJ seemed to fault for not being able to provide a sufficient explanation.[11]  These questions could have been addressed at the IEP process stage had there been active participation, which the District did not deter.  Indeed, C.Q.'s father testified that the District had actively included the parents in the process:

> Q.  Mr. Q., you knew prior to the March 6, 2012, IEP meeting that the District was going to propose an out-of-District placement for your son, correct?
>
> A. Yes. Yes.
>
> Q. And that's why your wife didn't attend, correct?
>
> A.  Yes.  Part of the reason.
>
> Q.  Because the two of you had already made your mind up at that point that your son wasn't going to be placed out of District, correct?
>
> A.  Correct.
>
> Q.  Because, in fact, prior to March 6, 2012, there had been a number of informal meetings with either the

---

[11]  Defendants also criticize Alloway because its witnesses were unable to state, inter alia, (1) what type of class C.Q. would be put in; (2) how many students were in the class; (3) the disabilities of the other students; (4) the cognitive abilities of the other students; (5) what behaviors the other students engaged in; (6) the qualifications of the behavioral consultant; and (7) whether any of the service providers had experience with students with behavioral challenges.  See Def. Cross-Motion, Docket No. 30-1, at 11-12.  Putting aside the indisputable fact that students advance and providers transition, the Defendants could have gotten these answers to these questions from a collaborative visit to SCSS, which they refused.

> principal or the members of the child study team about
> your son being placed out of District, correct?
>
> A.  I would say for an accurate answer, it had been
> mentioned previously.

See Compl. Ex. E, at 19:1-11.  When there is no impact on the
parents' full and effective participation in the IEP process,
there is no procedural violation constituting a denial of FAPE.
See Ridley School, 680 F.3d 260, 275 (3d Cir. 2012) (finding
that parents "were not denied their participation rights . . .
[and, thus] any deficiency in Ridley's compliance with the
procedural requirements of the IDEA is not a basis for granting
relief to Parents.").  There was no evidence before Judge James-
Beavers and she made no finding that Alloway had come to the
conclusion on C.Q.'s placement without parental input, failed to
discuss with C.Q.'s parents the prospective placements, or
failed to listen to the concerns of the parents.  To the
contrary, the record before the ALJ was that the District
believed that it could no longer provide a meaningful education
for C.Q. and that an out-of-district placement was needed.

The District considered several out-of-district placement
alternatives.  The District representatives testified that they
had previous experience with SCSS and based upon that
experience, their expertise in special education, and experience
with C.Q., SCSS offered an appropriate education.  Yet, when
C.Q.'s case manager contacted C.Q.'s parents, they refused to

visit any program or refused to entertain any discussion regarding the out-of-district placement.  Indeed, the record evidence demonstrated that the parents were involved in the formulation of the March 2012 IEP but were steadfast that C.Q. remain at Alloway.  See, e.g., Docket No. 23, Ex. D, February 2, 2012 e-mail from R.Q. to Morales, Gansert ("I was looking over the IEP and had some concerns . . . .  We do think he should remain at Alloway School, but think the program at Alloway needs some changes."); February 14, 2012 e-mail from R.Q. to Morales ("[C.Q.] and I are not interested in looking at any other programs and we wouldn't want to misrepresent ourselves by going to see any other programs/schools.  But you may forward us the names of placements you are considering.  The purpose of our letter was to reiterate our disagreement with a change of placement.  I hope that was clear and we remain steadfast in that belief.")[12]

In sum, as set forth in her Opinion, the ALJ held that the March 2012 IEP on its face denied FAPE because it failed to detail the out-of-district placement's services.  This Court finds that finding clearly erroneous, for the reasons set forth above.  Even assuming, however, the IEP's content was

---

[12]    Indeed, Alloway submitted hundreds of e-mails during the 2011-12 school year with the parents regarding C.Q.  Many of these e-mails were at the time Alloway was proposing an out-of-district placement.  See Doc. No. 23-15, Ex. D.

insufficient, Alloway afforded a procedure for the parents to participate in the decision-making process.  Any questions about the services, i.e., teacher qualifications, class size, were available to C.Q.'s parents who were invited to visit the program.  That the IEP did not set forth such content, does not translate into a procedural violation resulting in denial of FAPE.

There must be more than a facially deficient IEP to constitute a procedural violation resulting in a denial of FAPE. That is, there must be evidence that the parents were denied an opportunity to participate in the IEP process or that C.Q. was deprived of an educational opportunity.  C.H., 606 F.3d at 67 (stating that harm is present when the procedural violation "significantly impede[d] the parents' opportunity to participate in the decision-making process regarding a provision of a FAPE to the parent's child."); D.S., 602 F.3d at 565 ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits."). Here, there was no such evidence.  Indeed, C.Q.'s father further testified that "no one prevented him from asking questions at the IEP meeting and he did ask general questions about whom C.Q. would be with and they said "children like him."

Q. Sir, did you ask any specifics about the program?
It's a different question than you answered.

A. When I asked about children.  Their answer is, he's
going to be with kids like himself.

Q. Did you ask him how many kids were going to be in
the classroom with him?

A. I didn't.

Q. Did you ask what kind of training the teacher had?

A. I don't believe I asked that specifically, no.

Q. Did you ask any questions about how many aides
would be in the classroom with him?

A. I don't believe so.

Q. You didn't ask any of those questions about the
program?

A. I don't believe so, no.

Compl. Ex. E at 23:10-25.  A school district cannot be faulted
for drafting an IEP that does not answer all the parents' after-
the-fact questions when the parents were given an opportunity to
participate in the IEP and out-of-district placement process,
but declined to actively engage in that process.

Because this Court finds that the ALJ erred in determining
that a procedural violation occurred, both as to the face of the
IEP and predetermination of the IEP, the Court turns to the
second prong under Rowley.  Alloway asks this Court to grant
summary judgment in favor of the ALJ's finding that Alloway
could not provide a FAPE and therefore the out-of-district

placement was appropriate.  Alloway relies heavily on M.A. v. Voorhees Township Bd. of Education, 202 F.Supp. 2d 345 (D.N.J. 2002), aff'd. 2003 U.S. App. LEXIS 11255 (3d Cir. May 16, 2003), where the Court held that the in-district program did not confer an educational benefit and therefore a yet-to-be identified out-of-district program was appropriate.

It is not clear to this Court, however, that the ALJ decided the merits of the March, 2012 IEP.  The ALJ stated: "Although I need not reach the second [Rowley] prong of the standard on whether the District has provided FAPE . . . it needs to be addressed."  Op. at 21.  The ALJ went on to discuss the mainstreaming requirement articulated in Oberti, supra.  See Op. at 21-22.  The ALJ focused her findings on which school district could afford the least restrictive environment.  The ALJ stated that Alloway had to set forth in the IEP a comparison of the two districts and why SCSS would be able to mainstream C.Q. more than the District did.  See Op. at 22 ("the District has not proven . . . that it has mainstreamed C.Q. to the maximum extent possible or that Salem County will be able to mainstream him any more than the District has.")  The issue, however, should not have been a comparison between Alloway and SCSS.  S.H., 336 F.3d at 271 ("As the School District correctly points out, the issue is not a comparison between the [two schools].")  The issue, rather, is the appropriateness of the

24

IEP, whether the IEP was reasonably calculated to enable C.Q. to receive educational benefits.  If the transfer to SCSS would be detrimental, that is one factor weighing against the IEP.  S.H., 336 F.3d at 272.  See also Fuhrmann, 993 F.2d 1034-35 ("when a change in a child's IEP is sought, regardless of whether the party seeking the change is the school district or the parent, the burden of showing that the placement is appropriate rests with the school district.")

Only after the issue of the IEP's appropriateness was established, should the least restrictive environment be considered.  The S.H. decision is instructive.  There, the parents objected to the out-of-district placement because the proposed IEP did not offer a meaningful and appropriate education.  The school district argued that the out-of-district placement was proper because it offered the least restrictive environment.  The Third Circuit held that the school "cannot bootstrap the meaningful educational benefit with the LRE requirement. . . .  If the educational environment is not appropriate, then there is no need to consider whether it is the least restrictive."  S.H., 336 F.3d at 272.  Here, it was the parents who objected because the IEP failed to specify how the placement at SCSS would be in the LRE comparable to Alloway. The relevant inquiry, however, should have been whether the IEP's out-of-district placement was appropriate.  See Carlisle

62 F.3d at 533-34.  Only then should the issue of LRE have come into play.  Yet the discussion of the ALJ appears to focus on her decision that the school must set forth in its IEP how the out-of-district placement would afford the LRE, which is not correct.

Because it does not appear that the ALJ reached the merits of the March 2012 IEP, a remand is warranted.  Accordingly, the Court denies Defendants' motion for summary judgment and grants Plaintiff's motion in part on this ground and remands this matter to the ALJ for further consideration consistent with this Opinion.  An appropriate Order will issue this date.

                                   s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE

Dated:    March 14, 2014